# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

JAMES AND DEBRA PARSONS,
Individually and on Behalf of All
Others Similarly Situated,

            Plaintiffs,

            vs.

WHIRLPOOL CORPORATION AND
ECOWATER SYSTEMS LLC A/K/A
ECODYNE,

            Defendants.

Case No.

**CLASS ACTION COMPLAINT
DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT

James Parsons and Debra Parsons ("Plaintiffs" or "the Parsons"), individually and on behalf of all others similarly situated, bring this action against Whirlpool Corporation ("Whirlpool" or "Defendant"). The following allegations are based upon personal knowledge as to Plaintiffs' own conduct, the investigation of counsel, and upon information and belief as to the acts of others.

## I.    SUMMARY OF CASE

1.    Plaintiffs James Parsons and Debra Parsons ("Plaintiffs" or "the Parsons") represent a proposed class of thousands of consumers who owned and used water filters designed, manufactured, and distributed by Whirlpool and EcoWater Systems LLC (collectively, "Defendants") including, but not limited to, Undersink Filtration Systems models ("Class Water Filters"), that are

manufactured in a way that allows them to crack and/or creep, causing water to leak from the filter. The cracking and/or creeping described above is "the Defect".

2. The seriousness of the hazards the Defect poses is exemplified by Plaintiffs' experiences, later described in detail, where the Defect could have been catastrophic: the Parsons' home could have flooded and caused significant property damage. Other consumers' experiences are equally alarming and illustrate the degree to which the Class Water Filters pose an unreasonable hazard.

3. Defendants have known of the Defect and its dangers for years; however, to date, it has failed to recall the Class Water Filters or to inform or alert the public that the Class Water Filters are defective and pose a serious risk.

4. Defendants' conduct violates well-established contract, tort, and consumer protection laws of Florida and of other states, in addition to federal law.

5. Plaintiffs bring this suit on behalf of themselves and other similarly-situated consumers.

6. Plaintiffs seek damages and appropriate equitable relief, including an order enjoining Defendants from selling or leasing the Class Water Filters without disclosing the Defect to consumers.

## II.    <u>PARTIES</u>

7.    Plaintiffs James and Debra Parsons reside at 339 Presidential Boulevard, Harrogate, TN 37752, in the County of Claiborne and are citizens of Harrogate, TN.  They also own a home at 407 Burning Tree, Destin, Florida, where the defective water filter was located.

8.    Defendant Whirlpool Corporation is a Delaware corporation that maintains its principal place of business at 2000 N. M-63, Benton Harbor, Berrien County, Michigan 49002-2692.

9.    Defendant EcoWater Systems LLC is a foreign limited liability corporation with at least one of its members as a citizen of the state of Delaware.

## III.    <u>JURISDICTION AND VENUE</u>

10.    This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d), because (a) at least one member of the proposed classes is a citizen of a state different from Defendants (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, (c) the proposed class consists of more than 100 members, and (d) none of the exceptions under the subsection apply to this action.

11.    This Court has jurisdiction over Whirlpool because it is registered to conduct business in Michigan, maintains its headquarters in Michigan, has sufficient minimum contacts in Michigan, and otherwise intentionally avails

itself of the markets within Michigan through the promotion, sale, marketing, and distribution of its products, such that exercise of jurisdiction by this Court is proper and necessary.

12.    This Court has jurisdiction over EcoWater Systems LLC because it has sufficient minimum contacts in Michigan, and otherwise intentionally avails itself of the markets within Michigan through the promotion, sale, marketing, and distribution of its products, such that exercise of jurisdiction by this Court is proper and necessary

13.    Venue is proper in this District under 28 U.S.C. § 1391 because Defendants conduct substantial business in this District and a substantial part of Plaintiffs' claims occurred in this District.

## IV.    SUBSTANTIVE ALLEGATIONS

### A.    The Whirlpool Corporation

14.    The Whirlpool Corporation is the leading major appliance manufacturer in the world.  According to its 2016 Annual Report, it earned $21 billion in annual sales for the year—a fifth year of record results for Whirlpool. It employs 93,000 people, and operates 70 manufacturing and technology research centers. See

http://assets.whirlpoolcorp.com/2016Annual/Whirlpool_2016Annual-Report.pdf

(website last visited June 5, 2017) (See Exhibit 1, attached).[1]

15.    Whirlpool markets a number of brands world-wide including Whirlpool, KitchenAid, Maytag, Consul, Brastemp, Amana, Bauknecht, Jenn-Air, and Indesit.  See also http://www.whirlpoolcorp.com/our-company (website last visited June 5, 2017) (Exhibit 2).

16.    The Whirlpool Corporation  manufactures, distributes, sells, and leases a variety of appliances including washing machines and water filters, refrigerators and freezers, microwave ovens, oven ranges, dishwashers, water filters, water heaters, water softeners, water filtration systems, furnaces, dehumidifiers, and air purifiers/filters.  See  https://www.whirlpoolcorp.com/ (website last visited October 16, 2017) (Exhibit 3).

17.    Whirlpool's current "Environment, Health and Safety Policy" states the following:

Whirlpool Corporation is committed to adopting responsible business activities that are consistent with our reputation for integrity and quality.  Accordingly we are committed to protecting the health and safety of our employees, customers and other stakeholders. . . .

http://www.whirlpoolcorp.com/environment-health-and-safety-policy/   (website last visited June 5, 2017) (Exhibit 4).

---

[1] Hereinafter, website references will be designated by Exhibit number and each is attached to this Complaint.

**B.    EcoWater Systems LLC**

18.    EcoWater Systems LLC is a limited liability company that manufacturers and warrants Whirlpool dual stage filtration systems, Whirlpool reverse osmosis systems and Whirlpool central filtration systems under license.

19.    EcoWater Systems LLC is one of the largest manufacturers of residential water treatment systems.

**C.    The Water Filter Defect**

20.    The Class Water Filters that Plaintiffs and Class Members purchased have a common Defect in their design and manufacture.

21.    Specifically, Defendants designed and manufactured the Class Water Filters out of plastic, and the plastic fails to hold water without leaking.

22.    The leaking is caused when the plastic changes shape over time, which is called creep, due to environmental stress.

23.    The plastic deformation can manifest itself through excessive deformation of the plastic or through cracking.

24.    The Defect is particularly dangerous because it causes water damage and can lead to flooding and significant property damage.

25.    The Defect exists because Defendants failed to adequately design, manufacture, and test the Class Water Filters to ensure they were free from the Defect at the time of sale and failed to remove the defective water filters from

Plaintiffs' and Class Members' homes despite knowing of the Defect and the significant risk it posed to consumers and the public.

26.    The Defect, which is undetectable to the consumer, is manifest in the water filter when the water filter leaves Defendants' possession and the Defect creates an immediate safety risk to consumers.

27.    This common Defect causes a serious safety risk that requires replacement to remedy.

28.    This common Defect also causes the Class Water Filters to function improperly during the expected useful life of the water filter, resulting in flooding like what was experienced by Plaintiffs as well as failures, repairs, and a significant risk of property damage.

29.    Defendants owed a duty to Plaintiffs and others similarly situated to exercise reasonable prudence and ordinary care in the design, manufacture, testing, inspection, sale and distribution of its water filters.

30.    Notwithstanding this duty, the Parsons' water filter lasted only approximately a month before having its first leak.  This failure occurred well within what experts in the field have determined to be an average life expectancy for water filters.

**D.    Consumer Complaints Reveal the Magnitude of the Defect**

31.    The Consumer Products Safety Commission ("CPSC") has posted

online reports of Whirlpool water filter leaks

https://www.saferproducts.gov/Search/Result.aspx?dm=0&q=whirlpool+water+filter&srt=0; (Exhibit 5) (Saferproducts Online Report).

Note that the CPSC did not start its searchable public database until March 2011.

### How did the Database come about?

In August 2008, Congress passed the Consumer Product Safety Improvement Act (CPSIA). Section 212 of the CPSIA requires the U.S. Consumer Product Safety Commission (CPSC) to create, by March 2011, a searchable public database of reports of harm (Reports) related to the use of consumer products and other products or substances within the jurisdiction of the CPSC. Congress required that the Database be publicly available, searchable, and accessible through the CPSC's website.

https://www.saferproducts.gov/FAQ.aspx (website last visited June 5, 2017) (Exhibit 6).

32.    In addition, the CPSC provides consumer report of product incidents/defects to the manufacturers.

## ABOUT SAFER PRODUCTS.GOV

SaferProducts.gov is the Publicly Available Consumer Product Safety Information Database website of the U.S. Consumer Product Safety Commission (CPSC).

The U.S. Consumer Product Safety Commission is charged with protecting the public from unreasonable risks of injury or death from thousands of types of consumer products under the agency's jurisdiction. The CPSC is committed to protecting consumers and families from

products that pose a fire, electrical, chemical, or mechanical hazard or can injure children. The CPSC's work to ensure the safety of consumer products—such as toys, cribs, power tools, cigarette lighters, and household chemicals—contributed significantly to the decline in the rate of deaths and injuries associated with consumer products over the past 30 years.

Through **SaferProducts.gov**, consumers, child service providers, health care professionals, government officials and public safety entities can submit reports of harm (Reports) involving consumer products. Manufacturers (including importers) and private labelers identified in Reports will receive a copy of the Report, and have the opportunity to comment on them. Completed Reports and manufacturer comments are published online at www.SaferProducts.gov for anyone to search. (Emphasis added.)

33.    CPSC was required to create a public portal and a publicly accessible, searchable database of consumer product incident reports by the Consumer Product Safety Improvement Act (CPSIA), which became law on August 14, 2008. https://www.saferproducts.gov/About.aspx; (website last visited June 5, 2017) (Exhibit 7).

34.    The following is an exemplar complaint from the CSPS's reporting website regarding Whirlpool water filter defects as reported to the U.S. Consumer Product Safety Commission ("CPSC").

Report Number #20120125-2CD54-2147470968

Product Description Whirlpool Dual Under Sink Water Filtration System
Date of Incident 1/22/2012

Report Date 1/25/2012

Sent to Manufacturer/Importer/Private Labeler 2/15/2012

Manufacturer/Importer/Private Labeler Name
WHIRLPOOL CORPORATION
Brand Name Whirlpool

Model Name or Number
Item #: 152246 Model #: WHED205
Retailer Lowe's
Retailer State Maryland
Purchase Date 2/16/2010 This date is an estimate.

https://www.saferproducts.gov/ViewIncident/1209503; (website last visited June

19, 2017) (Exhibit 8).

35.    The following is an additional representative complaint about

Whirlpool water filters that was made to Lowes: "… Worked good for about

two years until plastic manifold cracked where yellow house connects."

https://www.lowes.com/pd/Whirldpool-10-in-Under-Sink-Complete-Filtration-

System/118833 (website last visited June 19, 2017) (Exhibit 9).

36.    In addition, the following representative complaints were submitted

to Whirlpool.com: "I was changing the filters yesterday when I noticed the main

filter housing was leaking.  The leak was in the main body of the unit where the

line from storage tank connects.  I called the customer service number;" "I had

the same leaking issue discussed in other threats in this list.  The housing

cracked where the yellow tube fitting attaches.  We now get to replace the floor

in the sink cabinet…"

https://www.whirlpoolwatersolutions.com/products/ultraease-reverse-osmosis-filtration-system/ (website last visited June 19, 2017) (Exhibit 10).

37.    The following are additional representative complaints about Whirlpool water filters that were made to Consumer Reports:

> "Without any warning, we were in another room and heard water running. Head cracked and kitchen flooded in minutes."

> "After you change the filters the first time, the unit leaks.  It is SO POORLY made the head cracks."

> "The first time we changed the filters, they leaked. It was still under warranty so they sent us a new system.  The first time we changed those filters, they eaked.  We tried different filters, which also leaked.  We had to stop using it."

https://www.consumerreports.org/products/water-filter/whirlpool-whed20-637/user-reviews/#user-reviews (website last visited October 30, 2017) (Exhibit 11).

38.    Despite the high number of complaints, Defendants continue to conceal the existence of the Defect from current customers and potential customers alike.   Defendants have not warned consumers at the point of sale.

39.    Defendants continue to conceal the Defect even though they know that the defect is not reasonably discoverable by customers unless they experience the Defect first hand.

40.    Defendants remain silent even as they continue to receive

complaints from customers.

41.    As a result of Defendants' inaction and silence, many customers are unaware that they purchased a water filter that leaks and is defective. Defendants know of the Defect yet continue to profit from the sale of water filters to unwitting consumers.

## V.    PLAINTIFFS' EXPERIENCE

42.    On or about August 2015, Plaintiffs evaluated the various reverse osmosis water filters for sale at the Lowe's store located in Destin, Florida. Plaintiffs identified the Whirlpool three-stage reverse osmosis water filter, Model No. WHER 2555, as a potential water filter for their residence.

43.    That night, Plaintiffs performed on-line research to determine whether the potential water filter met their needs including but not limited to the cost, ease of install, effectiveness and water capacity.

44.    Approximately two to three days later, Plaintiffs returned to the same store and purchased a Whirlpool three-stage reverse osmosis water filter, Model No. WHER 2555, which was manufactured by EcoWater Systems LLC a/k/a Ecodyne.  The Parsons paid approximately $170.00 for the water filter.

45.    The Parsons purchased the water filter believing that it was properly designed, manufactured, and safe to use in their home.  The Parsons installed the water filter March 12, 2016.  Approximately six to eight weeks

later, the Parsons were shocked to enter their home and see standing water on their kitchen floor and dripping from their kitchen sink cabinet and turned off the water line.  They soaked up the water and, the next day, found the leak in the water filter housing.

46.    The following day, Mr. Parsons contacted Whirlpool and notified it of the defective filter and damage to their kitchen cabinets and floor.  Whirlpool ignored the damage to Mr. Parsons' home and responded it would only send a replacement housing, which it did.

47.    Below are photos of the water filter:

**Three-Stage Reverse Osmosis Water Filtration System Manifold**



**Manifold's Cartridge Connection**



**Lateral View of Manifold**



## VI.    CLASS ACTION ALLEGATIONS

48.    Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring this case as a class

action on behalf of themselves and all others similarly situated as members of

the following proposed Nationwide Class and Florida State Class (collectively, "the Classes"), on their federal and state claims as purchasers and lessees of the Class Water Filters.

## THE NATIONWIDE CLASS:

49.     During the fullest period allowed by law, all persons and entities residing in the United States, including its territories, who purchased or otherwise acquired the Class Water Filter, designed and/or manufactured by Defendants primarily for personal, family, or household purposes and not for resale.

## THE FLORIDA CLASS:

50.     During the fullest period allowed by law, all persons and entities residing in the State of Florida who purchased or otherwise acquired the Class Water Filter, designed and/or manufactured by Defendants primarily for personal, family, or household purposes and not for resale.

51.     Excluded from the proposed class is Defendants; any affiliate, parent, or subsidiary of Defendants; any entity in which Defendants has a controlling interest; any officer, director, or employee of Defendants; any successor or assign of Defendants; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse; and members of the judge's staff; and anyone who purchased a Class Water filter for the purpose of

resale.

52.    Members of the proposed class are readily ascertainable because the class definition is based upon objective criteria.

53.    **Numerosity**.  Defendants sold thousands of the Class Water Filters, including a substantial number in Florida.  Members of the proposed classes likely number in the thousands and are thus too numerous to practically join in a single action.  Class Members may be notified of the pendency of this action by e-mail and mail, supplemented by published notice (if deemed necessary or appropriate by the Court).

54.    **Commonality and Predominance**.  Common questions of law and fact exist as to all proposed Class Members and predominate over questions affecting only individual Class Members.   These common questions include:

a)  Whether the Class Water Filters designed, manufactured, and sold by Defendants pose safety risks to consumers;

b)  Whether Defendants knew, or should have known, that the products it sold into the stream of commerce pose unreasonable safety risks to consumers;

c)  Whether Defendants concealed safety risks the Class Water Filters pose to consumers;

d)  Whether safety risks the Class Water Filters pose to consumers

constitute material facts that the reasonable purchasers would have considered in deciding whether to purchase a water filter;

e) Whether the Class Water Filters designed, manufactured, and sold by Defendants possess material defects;

f) Whether the Defect in the Class Water Filters represents an unreasonable risk that cracking or creeping will occur or that, once either has occurred, will spread outside the Water filter cabinet;

g) Whether Defendants knew, or should have known, that the Class Water Filters possessed the Defect when it placed the Class Water Filters into the stream of commerce;

h) Whether Defendants concealed the Defect from consumers;

i) Whether the existence of the Defect is a material fact reasonable purchasers would have considered in deciding whether to purchase the Class Water Filter;

j) Whether the Class Water Filters are of merchantable quality;

k) Whether the Class Water Filters are likely to pose serious safety risks to consumers before the end of the water filters' reasonable expected lifetimes;

l) Whether the Class Water Filters are likely to crack or fail before the end of their reasonable expected lifetime;

m) Whether the Class Water Filters are defectively designed to allow water to spread outside of the water filter itself creating a serious risk of property damage;

n) Whether the Class Water Filters' Defect resulted from Defendants' negligence;

o) Whether Defendants breached express warranties relating to the Class Water Filters by failing to recall, replace, repair, and/or correct the Defect in the water filters;

p) Whether Defendants breached the implied warranty of merchantability implied in every sale of goods;

q) Whether Defendants misrepresented the characteristics, qualities, and capabilities of the Class Water Filters;

r) Whether Defendants either knew or should have known of the Defect prior to  marketing and selling or leasing the Class Water Filters to Plaintiffs and Class Members;

s) Whether Defendants omitted, concealed from and/or failed to disclose in its communications and disclosures to Plaintiffs and Class Members material information regarding the Defect at the point of sale and beyond;

t) Whether Defendants omitted, concealed from and/or failed to disclose

in its communications and disclosures to Plaintiffs and Class Members material information regarding the Class Water Filters' safety issues at the point of sale and beyond;

u) Whether Defendants failed to warn consumers of the Defect at the point of sale and beyond;

v) Whether Defendants failed to warn consumers that its Class Water Filters pose serious safety issues at the point of sale and beyond;

w) Whether Defendants made fraudulent, false, deceptive, and/or misleading statements in connection with the sale of the Class Water Filters at the point of sale and beyond;

x) Whether Defendants were unjustly enriched by selling the Class Water Filters;

y) Whether Defendants should be ordered to disgorge all or part of the profits it received from the sale of the defective Class Water Filters;

z) Whether Plaintiffs and Class Members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

aa) Whether Plaintiffs and Class Members are entitled to replacement of their defective Water filters;

bb)    Whether Plaintiffs and Class Members are entitled to equitable

relief, including an injunction requiring that Defendants engage in a corrective notice campaign, retrofit program, and/or a recall; and

cc) Whether Plaintiffs and Class Members are entitled to an award of reasonable attorneys' fees, pre-judgment interest, post-judgment interest, and costs.

55.    **Typicality.**  Plaintiffs have substantially the same interest in this matter as all other members of the proposed Nationwide Class and Florida Class they seek to represent, and Plaintiffs' claims arise out of the same set of facts and conduct as all other Class Members.  Plaintiffs and all Class Members own or owned a water filter designed and/or manufactured by Defendants with the uniform Defect that makes the Class Water Filters defective and dangerous upon first use and cause the water filters to fail within their expected useful lives.  All of the claims of Plaintiffs and Class Members arise out of Defendants' placement into the marketplace of a product it knew was defective and posed safety risks to consumers, and from Defendants' failure to disclose the known safety risks and Defect.  Also common to Plaintiffs' and Class Members' claims is Defendants' conduct in designing, manufacturing, marketing, advertising, warranting and/or selling the defective water filters, Defendants' conduct in concealing the Defect in the water filters, and Plaintiffs' and Class Members' purchase of the defective water filters.

56.    **Adequacy of Representation.**    Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in products liability, deceptive trade practices, and class action litigation. Accordingly, Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the Classes.  Plaintiffs' claims are coincident with, and not antagonistic to, those of other Class Members they seek to represent. Plaintiffs have no disabling conflicts with the Class Members and will fairly and adequately represent the interests of the Class Members.

57.    **Superiority.**  A class action is superior to other available means for the fair and efficient adjudication of this dispute.  The injury suffered by each class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendants economically feasible.  Even if Class Members themselves could afford such individualized litigation, the court system could not.  In addition to the burden and expense of managing many actions arising from the defective water filters, individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and

comprehensive supervision by a single court.

58.    In the alternative, the proposed Classes may be certified because: the prosecution of separate actions by the individual members of the proposed class would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Defendants; the prosecution of individual actions could result in adjudications, which  as a practical matter, would be dispositive of the interests of non-party Class Members or which would substantially impair their ability to protect their interests; and Defendants have acted or refused to act on grounds generally applicable to the proposed class, thereby making appropriate final and injunctive relief with respect to the members of the proposed class as a whole.

## VII.  TOLLING OF STATUTES OF LIMITATIONS

59.    **Discovery Rule.**  Plaintiffs' claims accrued upon discovery that their Class Water Filter was defective in that water filters of this type are manufactured in a way that causes property damage which, in turn, results in costly repairs.  While Defendants knew and concealed at the point of sale the fact that Class Water Filters share a defect that causes property damage, Plaintiff and Class Members could not and did not discover this fact through reasonable diligent investigation until after they experienced such property damage. Plaintiff and Class Members who experienced property damage caused by

leaking Class Water Filters could not know that these water filters presented this danger.

60. **Active Concealment Tolling.**  Any statutes of limitations are tolled by Defendants' knowing and active concealment of the fact that the Class Water Filters suffered from an inherent defect.  Defendants kept Plaintiff and all Class Members ignorant of vital information essential to the pursuit of their claims, without any fault or lack of diligence on the part of Plaintiff.

61. The details of Defendants' efforts to conceal at the point of sale its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and Class Members, and await discovery.  Plaintiffs and Class Members could not reasonably have discovered the fact that the Class Water Filters were defective and that such water filters could spontaneously catch fire.

62. **Estoppel.**  Defendants were and are under a continuous duty to disclose to Plaintiffs and all Class Members the true character, quality, and nature of the Class Water Filters.   At all relevant times, and continuing to this day, Defendants knowingly, affirmatively, and actively misrepresented and concealed the true character, quality, and nature of the Class Water Filters.  The details of Defendants' efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and

Class Members, and await discovery. Plaintiffs reasonably relied upon Defendants' affirmative misrepresentations and knowing, affirmative, and/or active concealment. Based on the foregoing, Defendants are estopped from relying upon any statutes of limitation in defense of this action.

63. **Equitable Tolling**. Defendants took active steps to conceal the fact that it wrongfully, improperly, illegally, and repeatedly manufactured, marketed, distributed, sold, and/or leased Class Water Filter that are defective. The details of Defendants' efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and Class Members, and await discovery. When Plaintiffs learned about this material information, they exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing their claims. Defendants fraudulently concealed its above-described wrongful acts. Should it be necessary to assert, therefore, all applicable statutes of limitation are tolled under the doctrine of equitable tolling.

### VIII. <u>CLAIMS FOR RELIEF</u>

### <u>COUNT I</u>

### <u>Declaratory Relief</u>

(Plaintiffs, Individually, and on Behalf of the Nationwide Class and,

Alternatively, the Florida Class against Defendants)

24

64.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein.

65.    There is a controversy between Defendants and proposed Class Members concerning the existence of the Defect in the Water filters.

66.    Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

67.    Accordingly, Plaintiffs and Class Members seek a declaration that the Class Water Filters have the common Defect alleged herein in their design and/or manufacture.

68.    Additionally, Plaintiffs and Class Members seek a declaration that this common Defect found in the water filters poses serious safety risks to consumers and the public.

## COUNT II

## Unjust Enrichment

(Plaintiffs, Individually, and on Behalf of the Nationwide Class and,

Alternatively, the Florida Class against Defendants)

69.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein.

70.    As described above, Defendants sold the Class Water Filters to

Plaintiffs and Class Members even though those water filters were defective.

71.    Defendants failed to disclose the Defect at the point of sale or otherwise.

72.    Defendants unjustly charged Plaintiffs and Class Members for repairs and/or replacement of the defective water filters without disclosing that the Defect is widespread, and repairs do not address the root cause of the Defect.

73.    Defendants unjustly refused to repair or recall the Class Water Filters in spite of the Defect that it has long known about and, instead (at most) told consumers that they need to hire a professional to disassemble and clean out the Class Water Filters on a periodic basis at consumer's own cost or by their own hand even though Defendants know this "instruction" is totally ineffective.

74.    As a result of its acts and omissions related to the Defect, Defendants obtained monies that rightfully belong to Plaintiffs and Class Members.

75.    Defendants appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and Class Members who, without knowledge of the Defect, paid a higher price for their Class Water Filters than those water filters were worth.

76.    Defendants also received monies for those water filters that Plaintiffs and Class Members would not have otherwise purchased.

77.     The Plaintiffs and Class Members did not receive the benefit of their bargain.

78.     Defendants' retention of these wrongfully-acquired profits violates fundamental principles of justice, equity, and good conscience.

79.     Plaintiffs and Class Member seek restitution from Defendants and an order proportionally disgorging all profits, benefits, and compensation obtained by Defendants from its wrongful conduct and establishment of a constructive trust from which Plaintiffs and Class Members may seek restitution.

## COUNT III

### Negligence

(Plaintiffs, Individually, and on Behalf of the Nationwide Class against

Defendants)

80.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein.

81.     Defendants owed a duty to Plaintiffs and Class Members to design, manufacture, produce, test, inspect, market, distribute, and sell Class Water Filters with reasonable care and in a workmanlike fashion, and had a duty to protect Plaintiffs and Class Members from foreseeable and unreasonable risks of harm.

82.    Defendants breached that duty by, among other things, defectively designing, manufacturing, testing, inspecting, and distributing the Class Water Filters.

83.    As set forth more fully above, Defendants knew or should have known that the Class Water Filters they designed, manufactured, produced, tested, inspected, marketed, distributed, and sold, when used in an ordinary and foreseeable manner, create an unreasonable safety risk and fail to perform as intended.

84.    Defendants knew or should have known that the Class Water Filters create unreasonable safety risks as the Class Water Filters have the Defect that causes them to crack, creep and leak water, which water spreads outside the water filter cabinet.

85.    Defendants knew or should have known that the Class Water Filters have the Defect that can cause catastrophic property damage.

86.    Based on this knowledge, Defendants had a duty to disclose to the Plaintiffs and Class Members the serious safety risks posted by the Class Water Filters and a duty to disclose the defective nature of the Class Water Filters at the point of sale and beyond. Because of Defendants' conduct, Plaintiffs and Class Members did not receive the benefit of their bargain as they would have either not purchased a water filter with the safety defect or would have paid less

for it than they did.

87.    Defendants had a further duty not to put defective Class Water Filters on the market, and have a continuing duty to retrofit or replace its unsafe water filters, remove its unsafe water filters from the market, and recall the water filters from consumers' homes.

88.    Defendants failed to exercise reasonable care with respect to design, manufacture, production, testing, inspection, marketing, distribution, and sale of the Class Water Filters by, among other things, failing to design and manufacture the water filters in a manner to ensure that, under normal intended usage, serious safety risks such as the ones posed by the Class Water Filters did not occur.

89.    Defendants failed to exercise reasonable care because they failed to adequately and sufficiently inform users of their Class Water Filters, either directly or indirectly, of the uniform Defect in the water filters.

90.    Defendants failed to exercise reasonable care when they knew of the safety risks the Class Water Filters pose and actively concealed those risks from Plaintiffs and Class Members.

91.    Defendants failed to exercise reasonable care when they failed to replace, repair, retrofit, or recall Class Water Filters they knew or should have known were unsafe and defective.

92.     Defendants failed to exercise reasonable care when they did not conduct adequate testing, including pre-and post-marketing surveillance of the safety of the Class Water Filters.

93.     As direct and proximate result of Defendants' negligence, Plaintiffs and Class Members bought the Class Water Filters without the knowledge of the Defect or of their serious safety risks.

94.     As a direct and proximate result of Defendants' negligence, Plaintiffs and Class Members purchased unsafe products that could not and cannot be used for their intended use.

95.     As a direct and proximate result of Defendants' negligence, Plaintiffs and Class Members have suffered damages.

96.     Defendants were unjustly enriched by keeping the profits from the sales of the unsafe Class Water Filters while never having to incur the cost of repair, replacement, or a recall.

97.     Defendants' negligence was a substantial factor in causing harm to Plaintiffs and Class Members and unjustly enriching Defendants.

## **COUNT IV**

### **Breach of Implied Warranty of Merchantability**

(Plaintiffs, Individually, and on Behalf of the Nationwide Class against

Defendants)

98.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

99.    The Class Water Filters owned by Plaintiffs and Class Members were defectively designed and manufactured and pose serious and immediate safety risks to consumers and the public.

100.    The Class Water Filters that left Defendants' facilities and control were manufactured according to defective designs.

101.    The Defect places consumers and the public at risk for their safety when the Class Water Filters are used in consumers' homes.

102.    At all times relevant hereto, Defendants were under a duty imposed by law requiring that a manufacturer or seller's product be reasonably fit for the ordinary purposes for which the product is used and that the product be acceptable in trade for the product description.  This implied warranty of merchantability is part of the basis of the bargain between Defendants, on the one hand, and Plaintiffs and Class Members on the other.

103.    Notwithstanding the aforementioned duty, at the time of delivery, Defendants breached the implied warranty of merchantability in that the Class Water Filters were defective and posed a serious risk at the time of sale, would not pass without objection, are not fit for the ordinary purposes for which such goods are used (safely filtering water), and failed to conform to the standard

performance of like products used in the trade.

104.   Defendants knew or should have known that the Class Water Filters pose a safety risk and are defective and knew or should have known that selling or leasing the water filters to Plaintiffs and Class Members constituted a breach of the implied warranty of merchantability.

105.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and Class Members bought the Class Water Filters without knowledge of the Defect or its serious safety risks.

106.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and Class Members purchased unsafe products which could not be used for their intended purpose of safely filtering water.

107.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and Class Members have suffered damages in that Plaintiffs and Class Members did not receive the benefit of their bargain and would have either not purchased the defective product or would not have paid as much as they did.

108.   Defendants were unjustly enriched by keeping the profits for its unsafe products while never having to incur the cost of repair, replacement, retrofit, or a recall.

## COUNT V

## Breach of Express Warranty

(Plaintiffs, Individually, and on Behalf of the Nationwide Class against all

Defendants)

109.  Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if fully set forth herein.

110.  Defendants are and were at all relevant times a merchant with respect to water filters.

111.  As fully pled, Defendants had knowledge of the Defect alleged herein and that it posed serious safety risks to consumer like Plaintiffs and Class Members.

112.  In its warranty to customers, Defendants warrant in writing that it will "pay for Factory Specified Parts and repair labor to correct defects in materials or workmanship that existed when this major appliance was purchased" within a year from the date of purchase.[2]

113.  The limited warranty of repair for the Class Water Filters fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and Class Members whole and/or because Defendants have refused to

---

[2] *See* Exhibit 12. "Whirlpool Model WHER255 Installation and Operation Manual."

provide remedies within a reasonable time.

114.   Defendants knew that the Class Water Filters contained the Defect when they sold the appliances to Plaintiffs and Class Members.  Defendants breached the express warranty to correct defects in materials and workmanship that existed when the water filters were purchased. Defendant failed to do so despite knowledge of alternative designs, alternative materials, and/or options for retrofits.  Defendants have not made repairs correcting such material Defect or component malfunctions in the Class Water Filters.

115.   Further, any "repairs" Defendants offer do not fix the safety issues with the Class Water Filters and are not adequate to fix the serious safety issues caused by the Defect.

116.   The limited warranty of repair for the Class Water Filters fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and Class Members whole and/or because Defendants have refused to provide the promised remedies within a reasonable time.

117.   Also, as alleged in more detail herein, at the time Defendants warranted and sold the Class Water Filters, they knew that the water filters did not conform to the warranties and were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or concealed material facts regarding the water filters.

118.   Accordingly, Plaintiffs and Class Members are not limited to the limited warranty of "repair" and Plaintiffs and Class Members seek all remedies allowed by law.

119.  As more fully detailed above, Defendants were notified of Plaintiffs' water filter damage but failed to provide defect-free water filters to Plaintiffs or Class Members free of charge or to provide adequate retrofit to remedy the Defect.

120.   As more fully detailed above, Defendants were provided notice and have been on notice of the Defect and of its breach of its express written warranties through their own internal and external testing as well as consumer warranty claims reporting leaks in the Class Water Filters, customer complaints, and CPSC complaints, yet they failed to repair, replace or retrofit the Class Water Filters to ensure they were free of defects in materials and workmanship.

121.  As a direct and proximate result of Defendants' breach of its express warranty, Plaintiffs and Class Members have suffered damages including not receiving the benefit of their bargain and that they—Plaintiffs and Class Members— would have either not purchased the defective product or would not have paid as much as they did for their Class Water Filters.

122.  Defendants have been unjustly enriched by keeping the profits from the sale of their unsafe Class Water Filters while never having to incur the cost

of repair, replacement, retrofit, or a recall.

## COUNT VI

### Injunctive Relief

(Plaintiffs, Individually, and on Behalf of the Nationwide Class and Florida

Class against Defendants)

123.  Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

124.  Defendants designed, manufactured, produced, tested, inspected, marketed, distributed, and sold Class Water Filters that contain material and dangerous Defect as described above.

125.  Based upon information and belief, Defendants continue to market, distribute, and sell the Class Water Filters that contain the material and dangerous Defect and have done nothing to remove the water filters containing the Defect described herein from the market and from the households of consumers.

126.  The Defect described herein poses an imminent threat to the safety of consumers and the public.

127.  Upon information and belief, Defendants have taken no corrective action concerning the Defect and have not issued any warnings or notices concerning the dangerous Defect, replaced or retrofitted the Class Water Filters,

or implemented a product recall.

128.   Plaintiffs and Class Members have suffered actual damage, are in immediate risk of suffering actual damage due to the Class Water Filters' Defect.

129.   Whirlpool should be required to take corrective action to avoid the serious and immediate safety risks the Class Water Filters pose, including: issuing a nationwide recall and replacement and/or retrofit of the water filters; issuing warnings and/or notices to consumers and Class Members concerning the Class Water Filters' Defect and the safety risks the water filters pose; and, if Defendants have not already done so, immediately discontinuing the manufacture, production, marketing, distribution, and sale of the defective water filters.

## COUNT VII

## Violations of the Florida Deceptive & Unfair Trade Practices Act,

## § 501.201 et seq.

(Plaintiffs Individually and on Behalf of the Florida Class against Defendants)

130.   Plaintiffs re-allege and incorporate by reference the preceding paragraphs as if fully set forth herein.

131.   Plaintiffs and the Florida Class Members are "consumer[s]" within the meaning of the Florida Deceptive & Unfair Trade Practices Act ("Florida

DUTPA"), §501.203(7).110.

132.   At all relevant times, Defendants were engaged in trade or commerce within the meaning of the Florida DUPTA, § 501.203(8).

133.   The Florida DUTPA applies to all claims of Plaintiff and the Florida Class because the conduct which constitutes violations of the code by Defendants occurred in the State of Florida.

134.   The Florida DUTPA declares "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204, Fla. Stat.

135.   For the reasons discussed herein, Defendants violated and continue to violate Florida DUPTA by engaging in the herein described unconscionable, deceptive, and unfair acts and practices proscribed by Fla. Stat. § 501.201, et seq.

136.   Defendants' affirmative misrepresentations, omissions, and practices as described were likely to and did, in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

137.   Defendants' actions constitute unconscionable, deceptive, or unfair acts or practices.   Defendants misrepresented and omitted material facts regarding the Class Water Filters by failing to disclose the known Defects and

engaging in immoral, unethical, oppressive, and unscrupulous activities that are substantially damaged consumers, in violation of the Florida UDTPA.

138. Defendants engaged in unfair methods of competition, unconscionable acts or practices and unfair or deceptive acts or practices likely to mislead consumers as prohibited by the Florida DUTPA including:

a.    Defendants manufactured, distributed, and sold Class Water Filters that it knew contained the Defect and would fail prematurely under normal use.  The Defects interfered with Plaintiffs' and Florida Class Members' reasonable expectations concerning the performance of their Class Water Filters and caused damages to Plaintiffs and Class Members.

b.    Defendants knew the Defects were unknown to and would not be easily discoverable by Plaintiffs and Florida Class Members and would defeat their ordinary, foreseeable, and reasonable expectations of their Water Filters.

c.    Defendants failed to notify Plaintiffs and Florida Class Members that repairs and/or replacement of the Water Filters themselves would cause Plaintiffs and Florida Class Members to sustain actual damages, including out-of-pocket costs for technician calls, replacement parts, and labor.  Plaintiffs and Florida Class Members were forced to incur costs associated with technician diagnostics and repairs and, even after repairs,

continued failure of the Water Filters.

139.   Defendants knew or should have known they were making representations about the quality and durability of the Class Water Filters by marketing and selling the water filters.

140.   Defendants concealed, omitted, and failed to disclose the latent Defect.

141.   Defendants knew or should have known of the Defect at the time of sale.

142.   Plaintiffs and the Florida Class Members reasonably relied on Defendants' misrepresentations and omissions of material facts when they purchased the filters. Further, facts surrounding the Defect could not have been known to the consumer at the time of purchase because the symptoms of the defect emerged months or years after the Class Water Filters were in use.

143.   Plaintiffs and the Florida Class Members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and their concealment of and failure to disclose material information.

144.   Plaintiffs and the Florida Class Members who purchased the Class Water Filters would not have purchased them at all and/or—if the water filters' true nature had been disclosed and mitigated—would have paid significantly

less for them.

145.   Plaintiffs and the Florida Class Members also suffered diminished value of their water filters, as well as lost or diminished use.

146.   These Plaintiffs and Class Members have lost the benefit of their bargain.

147.   Defendants had an ongoing duty to all of its customers to refrain from unfair and deceptive practices under the Florida DUTPA.

148.   All owners of the Class Water Filters suffered ascertainable loss in the form of diminished value of their water filters as a result of Defendants' deceptive and unfair acts and practices made in the course of Defendants' business.

149.   Defendants' violations present an immediate and continuing risk to Plaintiffs as well as to the general public. Defendant's unfair acts and practices complained of herein significantly affect the public interest.

150.   As a direct and proximate result of Defendants' violations of the Florida DUTPA, Plaintiffs and the Florida Class have suffered injury-in-fact and/or actual damage.

151.   Plaintiffs seek injunctive relief to enjoin Defendants from continuing its unfair and deceptive acts; declaratory relief; and to recover their actual damages under section 501.211(2), Fla. Stat. and reasonable attorneys'

fees under section 501.2105, Fla. Stat.; and any other just and proper relief available under Florida UDTPA.

152.   Plaintiffs also seek punitive damages against Defendants because they carried out despicable conduct with willful and conscious disregard of the rights and safety of others.

153.   Defendants intentionally and willfully misrepresented the safety and reliability of the Class Water Filters and concealed material facts that only they knew.

154.   Defendants' conduct constitutes malice, oppression, and fraud warranting punitive damages.

## **COUNT VIII**

## **Breach of Express Warranty, §672.313 Fla. Stat.**

(Plaintiffs, Individually, and on Behalf of the Florida Class against

Defendants)

155.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein.

156.   Defendants are and were at all relevant times "seller" with respect to the Class Water Filters under Florida Statutes Annotated, §672.103(1)(d).

157.   The Class Water Filters are and were at all relevant times "goods" within the meaning of Florida Statutes Annotated, §105(1).

158.   As fully pled, Defendants had knowledge of the Defect alleged herein and that it posed serious risks to consumer like Plaintiffs and Class Members.

159.   Defendants provide a one year warranty to customers on reverse osmosis drinking water systems.   In their warranty, Defendants warrant in writing that they will either replace or repair the part without charge if, within the first year, a part proves after inspection to be defective.[3]

160.   Defendants knew that the Class Water Filters contained the Defect when they sold the appliances to Plaintiffs and Class Members.   Defendants breached the express warranty to correct defects in materials and workmanship that existed when the water filters were purchased.   Defendants failed to do so despite knowledge of alternative designs, alternative materials, and/or options for retrofits.

161.   Defendants have not made repairs correcting such material Defect or component malfunctions in the Class Water Filters.

162.   Further, any "repairs" Defendants offer do not fix the safety issues with the Class Water Filters and are not adequate to fix the serious safety issues caused by the Defect.

---

[3] *See* Exhibit 12, "Whirlpool Model WHER255 Installation and Operation Manual."

163.   The limited warranty of repair for the Class Water Filters fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and Florida Class Members whole and/or because Defendants have refused to provide the promised remedies within a reasonable time.

164.   Also, as alleged in more detail herein, at the time Defendants warranted and sold the Class Water Filters, they knew that the water filters did not conform to the warranties and were inherently defective, and Defendants wrongfully and fraudulently misrepresented and/or concealed material facts regarding the water filters.

165.   Accordingly, Plaintiffs and Florida Class Members are not limited to the limited warranty of "repair" and Plaintiffs and Florida Class Members seek all remedies allowed by law.

166.   As more fully detailed above, Defendants were notified of Plaintiffs' water filter leaks but failed to provide defect-free water filters to Plaintiffs or Florida Class Members free of charge or to provide adequate retrofit to remedy the Defect.

167.   As more fully detailed above, Defendants were provided notice and have been on notice of the Defect and of its breach of its express written warranties through their own internal and external testing as well as consumer warranty claims reporting cracks and leaks in the Class Water Filters, customer

complaints, and CPSC complaints, yet they failed to repair, replace or retrofit the water filters to ensure they were free of defects in materials and workmanship.

168.  Defendants' attempts to disclaim or limit their express warranties vis-à-vis consumers are unconscionable under the circumstances here. Specifically, Defendants' warranty limitation in unenforceable because they knowingly sold a defective product without warning consumers.

169.  The warranty time limit is also unconscionable because it fails to protect Plaintiffs and Florida Class Members.  Among other things, Plaintiffs and the Florida Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favor Defendants.  A gross disparity in bargaining power existed between Defendants and Plaintiffs and Florida Class Members, and Defendants knew or should have known that the Class Water Filters were defective at the time of sale and would fail well before their useful life expectancy.

170.  Accordingly, recovery by Plaintiffs and other Florida Class Members is not restricted to the limited warranty promising to repair and/or correct a manufacturing defect, and Plaintiffs, individually and on behalf of the other Florida Class Members, seek all remedies as allowed by law.

171.  Moreover, many of the injuries flowing from the Class Water

Filters cannot be resolved through the limited remedy of "repair", as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein.

172.    Because of Defendants' breach of warranty as set forth herein, Plaintiffs and the other Florida Class Members assert, as additional and/or alternative remedies, the revocation of acceptance of the Class Water Filters and the return to Plaintiffs and the other Florida Class Members the purchase price of their water filters, and for such other incidental and consequential damages as allowed.

173.    As a direct and proximate result of Defendants' breach of its express warranty, Plaintiffs and Florida Class Members have suffered damages in an amount to be determined at trial as they have lost the benefit of their bargain.

## **COUNT IX**

## **Breach of Implied Warranty of Merchantability,**

## **§§ 672.314 and 680.212 Fla. Stat**.

(Plaintiffs Individually and on Behalf of the Florida Class against Defendants)

174.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein

175.    Defendants are and were at all relevant times a "merchant" with

respect to water filters including Class Water Filters under §672.104(1) and 680.1031(3)(k) and a "seller" of appliances including Class Water Filters under Florida Statutes Annotated §§ 672.103(1)(d).

176. The Class Water Filters are and were at all relevant times "goods" within the meaning of Florida Statutes Annotated, §§ 672.105(1) and 680.1031(1)(h).

177. A warranty that the Class Water Filters were in merchantable condition and fit for the ordinary purpose for which water filters are used is implied by law pursuant to Florida Statutes Annotated, §§ 672.314 and 680.212.

178. The Class Water Filters, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which residential water filters are used. Thus, these Plaintiffs and Class Members have lost the benefit of their bargain in that that they would not have purchased the product if they had been advised it was not in merchantable condition or would have paid less for it.

179. Defendants were provided notice of these issues by, among other means: consumer contact (including Plaintiffs' contacts) and complaints posted on the CPSC website and Whirlpool websites.

180. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and the other Florida Class

Members have been damaged in an amount to be proven at trial.

## IX.    **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that the Court enter a judgment awarding the following relief:

A.    An Order certifying this action as a class action;

B.    An Order appointing Plaintiffs as class representatives and appointing undersigned counsel to represent the Classes;

C.    A Declaration that the Class Water Filters are defective;

D.    A Declaration that the Defect poses a serious safety risk to consumers;

E.    An Order awarding injunctive relief by requiring Defendants to issue corrective actions including notification, recall, and replacement of the Class Water Filters;

F.    Payment to the Classes of all damages associated with the replacement of the defective products, in an amount to be proven at trial;

G.    Payment to the Classes of all damages associated with property damage as a result of the defective products, in amount to be proven at trial;

H.    Restitution as authorized by law;

I.    Any and all equitable relief that might be available;

J.     Any and all statutory damages, penalties and exemplary damages that are available;

K.     An award of attorneys' fees and costs, as provided by law and/or as would be reasonable from any recovery of monies recovered for or benefits bestowed on the Classes;

L.     Interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provide by rule or statute; and

M.     Such other and further relief as this Court may deem just, equitable, or proper.

DATED: October 31, 2017              Respectfully submitted,

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Dennis A. Lienhardt (P81118)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Suite 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com
ssa@millerlawpc.com
dal@millerlawpc.com

Mitchell M. Breit
Paul J. Hanly, Jr.
**SIMMONS HANLY CONROY LLC**
112 Madison Avenue
New York, New York 10016-7416

49

Telephone: (212) 784-6400
Facsimile:  (212) 213-5949
mbreit@simmonsfirm.com
phanly@simmonsfirm.com

Jo Anna Pollock
 Simmons Hanly Conroy
One Court Street
Alton, Il 62002
Telephone: (618) 259-2222
Facsimile:  (618) 259-2251
jpollock@simmonsfirm.com

Gregory F. Coleman
Mark E. Silvey
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Telephone:  (865) 247-0080
Facsimile:  (865) 533-0049
greg@gregcolemanlaw.com
mark@gregcolemanlaw.com

*Attorneys for Plaintiffs and the Putative Class*